UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.                                                                                                  No. CR 07-748 MCA

**BRADLEY WASSON**, *et al.*,

    Defendants.

### MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on the following motions: (1) *Defendant Wasson's Motion and Supporting Memorandum for Discovery of Records or Reports Relating to Facts or Data Underlying Expert Opinions* [Doc. 313] filed on August 25, 2008; (2) *Travis Dally's Motion for Disclosure of Gang Expert Testimony, the Basis of Any Opinions Reached, and Request for a Pre-Trial Hearing on the Admissibility of the Expert's Opinion* [Doc. 331] filed on August 29, 2008; and (3) *Defendant Wasson's Motion for Discovery Regarding New Mexico Department of Public Safety DNA Testing Pertaining to Automated STR Testing* [Doc. 361] filed on September 18, 2008. Having considered the parties' submissions, the relevant law, and being fully advised in the premises, the Court grants the motions in part, denies the motions in part, and establishes a schedule for expert-witness discovery as set forth below.

### I.    BACKGROUND

The *Superseding Indictment* [Doc. 36] in this case charges each Defendant with one or more offenses under the "violent crimes in aid of racketeering activity" (VCAR) statute,

18 U.S.C. § 1959(a). As such, the Government will be required to prove at trial that the Defendants engaged, or conspired to engage, in a particular violent crime (*e.g.*, the murder of Henry George and/or the attempted murder of John Mudersbach), and that such crime was committed in aid of racketeering activity by an alleged enterprise (*e.g.*, the "Aryan Brotherhood"). To assist in proving the underlying violent crimes, the Government has identified and produced reports from four experts who may be called to testify about certain DNA evidence and dental records that are allegedly linked to the murder victim and/or one or more suspects in this case. To prove that such violent crimes were committed in aid of racketeering activity, it is also possible that the Government may decide to call a "gang expert." To defend against these charges, Defendants may seek to obtain their own experts.

Presently before the Court are motions filed by Defendant Wasson stating a blanket request for discovery of all facts or data underlying the opinions of the Government's experts, as well as a more specific request for information about the DNA testing that may underlie the opinions proffered by the Government's DNA experts. Defendant Dally has filed a motion seeking to challenge the admissibility of the Government's anticipated gang expert and to obtain discovery relevant to that challenge.

In its omnibus response to these motions, the Government contends, among other things, that its discovery obligations with regard to experts under Fed. R. Crim. P. 16 have not been triggered yet because the Government has not yet determined which experts it intends to call at trial, and because it has no obligation to produce records held by state agencies. In particular, the Government states that it has not yet decided whether to call its

"gang expert," *i.e.*, FBI Agent Theodore Griego.

## II.   ANALYSIS

A party's disclosure obligations for expert witnesses in criminal cases under Fed. R. Crim. P. 16 were recently discussed by the Tenth Circuit in United States v. Nacchio, 519 F.3d 1140, 1150-53 (10th Cir.), reh'g en banc granted, 535 F.3d 1165 (10th Cir. 2008). "At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(G). "The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Id.

In Nacchio, 519 F.3d at 1151, the Tenth Circuit explained that "Rule 16 is designed to give opposing counsel notice that expert testimony will be presented, permitting 'more complete trial preparation by the opposing side,' such as lining up an opposing expert, preparing for cross-examination, or challenging admissibility on Daubert or other grounds." Id. (citation omitted). Rule 16 disclosures in *criminal* cases, however, are not as extensive as the disclosures required of an expert witness in *civil* cases. See id. at 1152. In particular, the rule applicable to criminal cases does *not* require "an expert report in advance of testimony" that contains "'a complete statement of all opinions the witness will express and the basis and reasons for them,'" as well as the expert's "qualifications" and "all of the data or other information considered in forming the opinion, all summary or supporting exhibits, and the compensation he was paid." Id. (quoting Fed. R. Civ. P.26(a)(2)(B)). And because

the discovery rule in criminal cases requires the disclosure of less information, it is "not designed to allow the district court to move immediately to a Daubert determination without briefs, a hearing, or other appropriate means of testing the proposed expert's methodology." Id. at 1151.

Thus, at this preliminary stage where the Government apparently has not identified which of its potential expert witnesses it intends to call at trial or provided the "written summary" required under Fed. R. Crim. P. 16(a)(1)(G), it is premature for the Defendants to be demanding the type of extensive disclosures from the Government akin to those required in a civil case. Defendants' motions are therefore denied in part insofar as they seek such extensive disclosures from the Government at this preliminary stage when the Government has not identified which experts it is going to call at trial.

This ruling, however, does not preclude the Defendants from pursuing the New Mexico Department of Public Safety's administrative procedure for reviewing information at its testing laboratory, as summarized in the Government's response brief regarding the DNA evidence. [Doc. 396.] In addition, the Court will take steps to implement the procedure contemplated by Rule 16 and the panel opinion in Nacchio.

Under this procedure,
(1) the Defendants may request disclosure of the "written summary" regarding the Government's experts under Fed. R. Crim. P. 16(a)(1)(G);
(2) the Government is then required to respond by identifying each expert witness it intends to call during its case-in-chief at trial and providing the "written summary" required under

that rule for each witness so identified;

(3) the Government may request disclosure of the "written summary" regarding the Defendant's experts under Fed. R. Crim. P. 16(b)(1)(C);

(4) the Defendants then respond by identifying each expert witness they intend to call at trial and providing the "written summary" required under that rule for each witness so identified;

(5) based on the written summaries, the parties file Daubert motions or motions in limine challenging the admissibility of the proposed expert testimony and stating the basis for such challenges;

(6) in response to such motions, or at the Court's request, the proponent of the expert witness testimony in question provides a more detailed written proffer in support of its admissibility under Fed. R. Evid. 702 (or whatever rule is at issue); and

(7) in reply to such written proffers, the party opposing admission of the proposed expert testimony may request a Daubert hearing in order to voir dire the witness and thereby obtain further information about the contested aspects of the expert's opinions.

After this procedure is completed, the Court will be in a better position to make an informed ruling with specific findings on the record concerning the admissibility of the proposed expert testimony.  See Nacchio, 519 F.3d at 1152-55.

In the present case, Defendant Wasson's blanket discovery motion [Doc. 313], as well as Defendant Dally's motion pertaining to gang-expert testimony [Doc. 331] can be construed as invoking the right to receive a "written summary" of the Government's proposed expert's testimony under Fed. R. Crim. P. 16(a)(1)(G).  But rather than making the

requested disclosure of a "written summary" of its proposed experts' trial testimony as required under that rule, the Government's omnibus response claims that it need not do so until it unilaterally decides which experts it intends to call at trial and when to make that decision.

Allowing the Government to unilaterally control the timing of its expert-witness disclosures in this manner, and to postpone them until its final witness list is submitted at some later date approaching the eve of trial, would effectively subvert the purposes of the Court's *Scheduling Order* [Doc. 167] and the definite trial setting in this case [Doc. 166], as it would leave insufficient time to brief and hold hearings regarding the admissibility of proposed expert testimony.  Further, the only authority cited by the Government in support of its position regarding the timing of expert disclosures is distinguishable from the present case, because it involved a motion filed in a non-complex case with no trial setting.  See United States v. Price, 75 F.3d 1440, 1445-46 (10th Cir. 1996).

Under the particular circumstances of the present case, the Court has the inherent authority and supervisory power to order certain kinds of pretrial discovery that are not available as a matter of right, see, e.g., United States v. Napue, 834 F.2d 1311, 1317 (7th Cir. 1988), and to impose sanctions based on a party's violation of a discovery order even where Fed. R. Crim. P. 16 is inapplicable, see United States v. Gonzalez, 164 F.3d 1285, 1291 (10th Cir. 1999).  In particular, the Court has the authority to require the Government to file a witness list and to sanction a party for violating a discovery order containing such a requirement.  See Napue, 834 F.2d at 1317; United States v. Red Elk, 185 Fed. Appx. 716,

723 (10th Cir. 2006) (unpublished disposition affirming sanctions imposed for violating district court's order requiring expert disclosures).

In light of these authorities, I determine that the first step needed to establish an orderly procedure for handling discovery and motions practice regarding the parties' proposed experts in this case is to set a deadline for the Government to notify opposing counsel and the Court as to which experts the Government is going to call at trial and to provide opposing counsel with the "written summary" required under Fed. R. Crim. P. 16(a)(1)(G). Given that additional steps in the process listed above will need to be completed after the Government makes these initial disclosures, I find that a deadline of February 19, 2009, is appropriate for this first step in the process. Defendants' motions are granted in part insofar as they seek such a deadline.

Because Defendant Dally's motion already seeks to challenge the admissibility of anticipated expert testimony by the Government's gang expert, I will also require the Government to provide a specific written proffer regarding the admissibility of any proposed gang-expert testimony that is going to be offered at trial. See Nacchio, 519 F.3d at 1152-55 (citing United States v. Rodriguez-Felix, No. 04cr665 WJ, Doc. 76 (D.N.M. filed Mar. 25, 2004), aff'd 450 F.3d 1117 (10th Cir. 2006)). And by "specific written proffer," I do not mean a document that merely cites, or attaches testimony from, one or more previous cases in which the witness was qualified to testify as an expert.

A finding that a witness is *qualified* to testify as an expert in a particular field does not give that witness *carte blanche* to simply say whatever he or she wishes to say to the jury in

the form of a lengthy narrative. See United States v. Mejia, 545 F.3d 179, 190-93 (2d Cir. 2008). "Rather, the expert witness must provide 'brief, crisp answers to the Government's questions about several discrete topics' which are 'beyond the ken of the average juror,'" and which satisfy the relevance and reliability criteria of Fed. R. Evid. 702. United States v. Michael, No. 06cr1833 MCA, Doc. 119 (D.N.M. unpublished memorandum opinion and order filed Nov. 15, 2007) (quoting United States v. Tapia-Ortiz, 23 F.3d 738, 740-41 (2d Cir. 1994)). A law enforcement witness testifying as an expert at trial also must take care to avoid violating a Defendant's rights under the Confrontation Clause by transmitting hearsay in the form of out-of-court testimonial statements from other sources whom the law-enforcement witness has come across during the course of an investigation. See Mejia, 545 F.3d at 197-99 (citing Crawford v. Washington, 541 U.S. 36 (2004), and its progeny). These concerns, in addition to the proposed witness' qualifications, should be addressed in the Government's written proffer in the event that it decides to call its proposed gang expert at trial. The deadline for providing the Court and opposing counsel with this proffer will be February 26, 2009, and Defendant Dally's motion is granted in part insofar as it seeks this deadline.

If the Government complies with its initial discovery obligations under Fed. R. Crim. P. 16(a)(1)(G), then it may make a request for reciprocal discovery regarding the Defendants's experts under Fed. R. Crim. P. 16(b)(1)(C). And of course, any party may move for a protective order to exempt or delay the disclosure of specific information that would endanger the safety of a witness. By separate order, the Court also will require the

parties to meet and confer regarding the development of appropriate deadlines for completing the remaining procedures necessary to determine the admissibility of expert testimony that will be offered at trial, including additional written proffers, briefing on <u>Daubert</u> motions, and hearings on such motions.

### III.   CONCLUSION

For the foregoing reasons, the Court grants the Defendants' motions in part insofar as they seek to invoke the procedure for disclosing the expert witnesses that the Government will call at trial and start the process necessary to determine the admissibility of such expert testimony. In particular, the Court will require the Government to disclose its proposed expert trial witnesses and provide the written summary required under Fed. R. Crim. P. 16(a)(1)(G) by no later than February 19, 2009. The Court also will require the Government to make a specific written proffer in support of the admissibility of any proposed gang expert testimony that will be offered at trial by no later than February 26, 2009. The Defendants' motions are denied in part insofar as they seek more extensive written disclosures (such as those required in a civil case) at this juncture.

**IT IS THEREFORE ORDERED** that *Defendant Wasson's Motion and Supporting Memorandum for Discovery of Records or Reports Relating to Facts or Data Underlying Expert Opinions* [Doc. 313] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that *Travis Dally's Motion for Disclosure of Gang Expert Testimony, the Basis of Any Opinions Reached, and Request for a Pre-Trial Hearing on the Admissibility of the Expert's Opinion* [Doc. 331] is **GRANTED IN PART** and

**DENIED IN PART**.

**IT IS FURTHER ORDERED** that *Defendant Wasson's Motion for Discovery Regarding New Mexico Department of Public Safety DNA Testing Pertaining to Automated STR Testing* [Doc. 361] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Government must disclose its proposed expert trial witnesses and provide Defendants with the written summary required under Fed. R. Crim. P. 16(a)(1)(G) by no later than February 19, 2009.

**IT IS FURTHER ORDERED** that in the event that the Government intends to offer the testimony of a proposed gang expert at trial, the Government must make a specific written proffer in support of the admissibility of its proposed gang expert testimony by no later than February 26, 2009.

**SO ORDERED** in Albuquerque, New Mexico, this 2nd day of February, 2009.

                                                              **M. CHRISTINA ARMIJO**
                                                               United States District Judge