UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

      Plaintiff,

      v.                                                       No. **CR 07-748 MCA**

**BENJAMIN RAYMOND**,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on the *United States' Motion to Reconsider* [Doc. 558] the Court's *Sealed Memorandum Opinion and Order* [Doc. 518] dismissing the charges against Defendant Benjamin Raymond in the *Superseding Indictment* [Doc. 36]. Having reviewed the parties' submissions, the other materials of record, the relevant law, and being fully advised in the premises, the Court denies the Government's motion for the reasons set forth below.

    **A.**     **Time Limits for Filing a Motion to Reconsider**

The timing of the Government's motion must be addressed first because it affects this Court's jurisdiction. The Government filed its *Motion to Reconsider* [Doc. 558] on March 5, 2009, which was 27 days after the Court filed its *Sealed Memorandum Opinion and Order* [Doc. 518] granting Defendant Raymond's *Motion to Dismiss* [Doc. 308]. On February 24, 2009, the Court filed a *Redacted Memorandum Opinion and Order* [Doc. 548] which omitted certain personal identifiers that were contained in the *Sealed Memorandum Opinion and*

*Order* [Doc. 518] but did not change its analysis or effect in any way. For ease of reference, all further citations to the Court's prior ruling shall be to the *Redacted Memorandum Opinion and Order* [Doc. 548] filed on February 24, 2009, the content of which is identical to the *Sealed Memorandum Opinion and Order* [Doc. 518] filed 18 days earlier.

The Federal Rules of Criminal Procedure do not expressly provide for a motion to reconsider, nor do they expressly provide a rule governing the timeliness of such motions. See United States v. Jones, 608 F.2d 386, 390 (9th Cir. 1979); United States v. Titterington, No. CR. 2-20165, 2003 WL 23924932, at *1 (W.D. Tenn. May 22, 2003) (unpublished order collecting cases). Drawing analogies to Fed. R. Crim. P. 29, 33, and 34, the Fifth Circuit has reasoned that: "In the relatively small set of cases where the prosecutor has the right to take an appeal (which includes decisions to dismiss indictments, see 18 U.S.C. § 3731), the government should have the right to seek reconsideration in the district court within the same time frame the rules give to defendants to seek reconsideration," namely seven working days. See United States v. Powers, 168 F.3d 943, 947 (7th Cir. 1999). Such reasoning accounts for the concern that giving the Government a longer period of time than the Defendant in which to file motions to reconsider has the potential to create unfair tactical advantages or unnecessary delays.

Other courts, however, have reasoned that the time for filing a motion for reconsideration should coincide with the time for filing an appeal, in which case the Government may be given a longer period of time (30 days) than the Defendant (10 days). See, e.g., United States v. Nunez, 419 F. Supp. 2d 1258, 1265 (S.D. Cal. 2005) (citing Jones, 608 F.2d at 390. This reasoning accounts for the countervailing concern that district courts

should be given the opportunity to correct their own errors or clarify the record before the time for filing an appeal expires, "and allowing them to do so prevents unnecessary burdens being placed on the courts of appeals." United States v. Ibarra, 502 U.S. 1, 6 (1991).

Under the circumstances of this case, the Court determines that the interests of justice weigh in favor of following the approach articulated in Nunez and Ibarra, under which the Government's motion to reconsider is timely because it was filed within thirty days of the order dismissing the charges against Defendant Raymond. The Court will therefore address the merits of the Government's motion for the purpose of clarifying the record in the event of a subsequent appeal.

**B.    The Standard of "Actual Knowledge"**

In its motion to reconsider, the Government asserts that the Court erred in finding that the dismissed charges against Defendant Raymond in No. 07cr748 MCA arise out of conduct by him that was known to the USAO on or before October 14, 2004, the date of his plea agreement in United States v. Raymond, No. 03cr2066 MV, Doc. 45 (D.N.M. plea agreement filed Oct. 14, 2004). The Government's argument in support of this assertion employs the fallacy of diversion, also known as the "straw man" fallacy. See Edward Damer, Attacking Faulty Reasoning 157 (3d ed. 1995). Under this fallacy, the Government takes certain language from the Court's prior ruling out of context and distorts its meaning so as to suggest that the Court employed the standard of "potential knowledge" that was rejected in United States v. Sutton, 794 F.2d 1415, 1422-25 (9th Cir. 1986), and United States v. Belderrain, No. 08-8016, 2009 WL 205631 (10th Cir. Jan. 29, 2009) (unpublished disposition).

The last paragraph of Section II.A.3 of the *Redacted Memorandum Opinion and*

*Order* [Doc. 548, at 43] expressly cites <u>Sutton</u>, 794 F.2d at 1423, for the proposition that: "The words 'conduct known to the government' cannot be fairly construed as 'conduct that reasonably could have been known'" to the government if its investigation had been more timely and thorough. <u>Id.</u> The Court's prior ruling follows <u>Sutton</u> and <u>Belderrain</u> in rejecting a standard of "potential knowledge" and instead holding the USAO to a standard of "actual knowledge."

The facts in <u>Sutton</u> and <u>Belderrain</u> are distinguishable, however, because in those cases the prosecutors knew that the conduct in question had occurred but did not come across the information necessary to identify the defendant as the perpetrator of that conduct until after the date of the plea agreement. Here, in contrast, there is no mistaken or false identity at issue, because Defendant Raymond was clearly identified as a suspect in numerous documents that predate the plea agreement in No. 03cr2066 MV, including the search warrants for his vehicle and his apartment.

Recognizing these factual distinctions, as well as the important distinction between "crimes" and "conduct" articulated in <u>United States v. Jordan</u>, 509 F.3d 191, 196-98 (4th Cir. 2007), the Court applied the "actual knowledge" standard in the context of the Tenth Circuit's prior rulings that a defendant may use "indirect evidence" to meet his burden of proving by a preponderance of the evidence that the plea agreement was breached, "even though he can identify no 'smoking gun.'" <u>Allen v. Hadden</u>, 57 F.3d 1529, 1537 (10th Cir. 1995). Under these authorities, "actual knowledge" can be proven even though the USAO did not expressly admit such knowledge at the motion hearing and even though Defendant Raymond did not produce a written report with a date stamp confirming that the information

4

in question was received or sent by the USAO before the change-of-plea hearing on October 14, 2004. If the Court were to require such express admissions or written documentation from the USAO, then the Government's promise in Defendant Raymond's plea agreement would be rendered empty and illusory, because the Government could always prevent him from enforcing his plea agreement merely by denying knowledge of the conduct at issue and not retaining or producing its records documenting such knowledge.

Accordingly, the Court afforded Defendant Raymond the opportunity to prove the USAO's "actual knowledge" through circumstantial evidence gleaned from a prolonged effort to obtain the disclosure of relevant files and testimony from the USAO. Applying the "actual knowledge" standard, I now reiterate my finding that the dismissed charges against Defendant Raymond in No. 07cr748 MCA arise out of conduct by him that was *actually* known to the USAO on or before October 14, 2004, the date of his plea agreement in No. 03cr2066 MV.

### C.     Sufficiency of the Evidence

The Government's motion to reconsider next asserts that such a finding of actual knowledge is unsupported by the authorities and evidence that the Court considered in its prior ruling. In particular, the Government asserts that "there is not one scintilla of evidence to support a conclusion that Defendant Raymond was charged federally with felon in possession of a firearm in order to obtain his cooperation in the investigation of the AB or anyone else." [Doc. 558, at 9-10.]

Again, this argument employs the fallacy of diversion. The terms of Defendant Raymond's plea agreement in No. 03cr2066 MV do not depend on whether the USAO

5

intended to seek his cooperation at the time the charges were filed in that case. Rather, the question is whether the USAO had actual knowledge of Defendant Raymond's prior conduct *by the time the signed plea agreement was tendered to the Court at the change-of-plea hearing*.

With sufficient corroboration, it is reasonable to infer that the USAO knew about the murder investigation at issue in this case at the time it solicited Defendant Raymond's cooperation in that investigation. There is undisputed testimony in the record that the USAO conveyed a request for cooperation to Defendant Raymond's counsel, Mr. Gonzales, through Mr. Valencia, the Assistant United States Attorney prosecuting the firearm charge in No. 03cr2066 MV. The remaining question was when this request occurred.

When placed in its proper context and in light of his demeanor which the Court directly observed at the motion hearing, the testimony of Mr. Gonzales credibly indicates that the USAO's request for cooperation came *before* the date of the change-of-plea hearing in No. 03cr2066 MV. The Government asserts that the testimony of Mr. Valencia can be read to suggest that the request for cooperation came later, when Mr. Valencia delivered certain reports to Mr. Gonzales for purposes of the sentencing hearing in No. 03cr2066 MV. But again, the Court had the opportunity to observe Mr. Valencia's testimony and demeanor in its full context at the motion hearing, and the Court found that he "*did not recall* any conversations with Mr. Gonzales prior to the plea hearing in October 2004 concerning Defendant Raymond's involvement or possible involvement in the suspected murder in Rio Rancho." [Doc. 548, at 24, citing Doc. 497, Tr. 1-5-09, at 34-35.] An inability to recall such a conversation does not mean that it did not occur.

To assist in resolving any conflict or uncertainty in the recollections of Mr. Gonzales and Mr. Valencia, the Court also reviewed a number of factors and determined that they weighed in favor of finding that the USAO had actual knowledge of the conduct in question before the date of the change-of-plea hearing in No. 03cr2066 MV. The Government's *Motion to Reconsider* [Doc. 558] challenges this determination by employing a "divide-and-conquer analysis" akin to that rejected by our Supreme Court in United States v. Arvizu, 534 U.S. 266, 274 (2002). Under this approach, the Government's motion to reconsider asserts that each factor the Court considered in its prior ruling was by itself readily susceptible to an innocent explanation and was therefore entitled to no weight.

For example, the Government's motion discounts the significance of Albuquerque Police Department (APD) Officer Power as an available link to the Rio Rancho Department of Public Safety (RRPDS) investigation into the disappearance of Mr. George and the evidence of racketeering activity found at the apartments of Mr. George and Defendant Raymond. But the availability of information about the RRPDS investigation through Officer Power, by itself, was not the only factor that the Court considered in determining what the USAO actually knew about the conduct in question at the time of the change-of-plea hearing in No. 03cr2066 MV. At the time Mr. Valencia referred to Officer Power at the change-of-plea hearing, Mr. Valencia was not merely reading from a police report; he was representing to the Court that he had investigated the matter and found a factual basis to support the guilty plea.

The Court then considered Mr. Valencia's references to Officer Power and the evidence of communications between Officer Power and the RRPDS in the broader context

of assessing whether information about the RRPDS investigation was transmitted orally through the various informal channels of communications that existed among the USAO, ATF, APD, RRPDS, corrections officials, and the District Attorneys' offices in Bernalillo County and Sandoval County.  While the Court acknowledges the statistics in the Government's motion to reconsider suggesting that the USAO and its staff carry a heavy caseload [Doc. 558, at 12], in the context presented here such caseload statistics serve to increase the probability that important information (such as the RRDPS investigation into Mr. George's disappearance or reports of Defendant Raymond's affiliation with the Aryan Brotherhood) is communicated orally and informally, leaving less of a "paper trail" to document what the USAO actually knew at a given time.  "The heavy workload may well explain these episodes, but it does not excuse them."  Santobello v. New York, 404 U.S. 257, 260 (1971).

The Government's motion to reconsider next asserts that the policy stated in the United States Attorney's Manual with respect to assessing a defendant's cooperation before entering into a plea agreement does not, by itself, support a reasonable inference that such cooperation was sought before the plea agreement in this case.  But again, the Court did not consider the policy stated in the United States Attorney's Manual in a vacuum.  Rather, the Court considered this policy in the broader context of the evidence and testimony concerning "Project Exile" and the efforts of state and local authorities to "sell" gun-crime cases to the USAO by providing pertinent details about a suspect's gang-affiliation and criminal history.

Such efforts provide another avenue for transmitting information about Defendant Raymond's affiliation with the Aryan Brotherhood, in addition to the information supplied

8

before the change-of-plea hearing in the pre-plea pre-sentence report and in the police reports which, in Mr. Valencia's words, revealed "some kind of organized fraud" or a "conspiracy to commit . . . fraud." [Doc. 497, Tr. 1-5-09, at 28, 35-36, 39.]  Indeed, the Government now admits that Defendant Raymond's name appeared on a list of suspected Aryan Brotherhood members that state corrections officials provided in 2003 or early 2004 to FBI Agent Griego, who was working in concert with the USAO's southern office in Las Cruces, New Mexico. [Doc. 558, at 5.]  Such evidence, viewed under the totality of the circumstances rather than in isolation, lends further support to the Court's findings that the charges against Defendant Raymond in the present case are precluded by the broad language of the plea agreement in No. 03cr2066 MV.

### D.     Limits on the Court's Holding

Finally, the Court addresses the Government's policy argument that interpreting the terms of Defendant Raymond's plea agreement so broadly will lead to absurd and illogical results.  This argument rings hollow because it is the USAO--not the Court or the Defendant --that chose to include such broad language in the plea agreement.  Further, the Court's findings and conclusions are limited to the facts of this case and are not intended to suggest or imply that Defendant Raymond or any other defendant is forever immunized from further prosecution as a result of the language in the plea agreement at issue here.  In particular, this Court's ruling does not state or imply that the USAO is precluded from pursuing charges or sentencing enhancements based on a known prior conviction, because the plea agreement in question refers to knowledge of a *defendant's conduct*, not knowledge of a conviction or other *judicial action* by a court.  Similarly, the Court does not reach the question whether the

9

language from the plea agreement at issue here could be used to preclude the USAO from bringing charges based on conduct by a defendant that occurred *after* the date of the plea agreement, for all of the charges against Defendant Raymond in the present case arose from conduct in 2002 that *predates* the plea agreement in No. 03cr2066 MV. In these respects, the facts of the present case are readily distinguishable from those at issue in United States v. Puckett, 556 U.S. ___ (Mar. 25, 2009).

Our Supreme Court's application of the "plain error" standard in Puckett is inapposite here because, in this instance, the USAO's breach of the plea agreement was timely raised and preserved in the district court. Nevertheless, dicta in the Puckett opinion reinforces the reasoning employed in dismissing the present charges against Defendant Raymond. "Although the analogy may not hold in all respects, plea bargains are essentially contracts. When the consideration for a contract fails--that is, when one of the exchanged promises is not kept--. . . we say that the contract was broken. The party injured by the breach will generally be entitled to some remedy," which may include "specific performance of the contract." Id., slip. op. at 7-8 (citations omitted). By bringing the present charges against Defendant Raymond in No. 07cr748 MCA, the USAO breached its plea agreement in No. 03cr2066 MV, and the appropriate remedy is to require the USAO to fully comply with that agreement by dismissing the present charges against Defendant Raymond without prejudice.

For all of the above reasons, the Court reaffirms its finding that Defendant Raymond met his burden of proving that the charges against him in the present case are precluded by his plea agreement in No. 03cr2066 MV, and the Court declines the Government's request to reinstate the charges that were dismissed without prejudice in the Court's prior ruling.

10

**IT IS THEREFORE ORDERED** that the *United States' Motion to Reconsider* [Doc. 558] is **DENIED**.

**SO ORDERED** this 27th day of March, 2009, in Albuquerque, New Mexico.

      **M. CHRISTINA ARMIJO**
      UNITED STATES DISTRICT JUDGE